UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                            Chapter 7

Anna Baiardi,                                                     Case No. 12-55009

    Debtor.                                                Hon. Phillip J. Shefferly
_____/

Sandra Green,                                                     Adversary Proceeding
                                                                  No. 12-05632-PJS
    Plaintiff,

v.

Anna Baiardi,

    Defendant.
_____/

**OPINION DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

On June 21, 2012, the Debtor filed this Chapter 7 case. On September 10, 2012, Sandra User Green filed this adversary proceeding against the Debtor for a determination that the pre-petition fees that she incurred as a state court receiver in the amount of $7,577.68 are non-dischargeable in the Debtor's Chapter 7 bankruptcy case under § 523(a)(6), (7), and (15) of the Bankruptcy Code. On November 29, 2012, Green filed a motion for summary judgment. On December 17, 2012, the Debtor filed a motion for summary judgment. The Court heard the cross motions for summary judgment on February 1, 2013. At the conclusion of the hearing, the Court ruled that the debt owed by the Debtor to Green is not excepted from the Debtor's discharge under § 523(a)(7) or (15). The

Court denied Green's motion for summary judgment under § 523(a)(7) and (15), and granted the Debtor's motion for summary judgment under § 523(a)(7) and (15). The Court took under advisement the parties' cross motions under § 523(a)(6). For the reasons set forth in this opinion, the Court finds that the debt owed by the Debtor to Green is also not excepted from the Debtor's discharge under § 523(a)(6).

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

## Facts

The debt owed by the Debtor to Green arises out of the Debtor's divorce proceeding in the Oakland County Circuit Court for the State of Michigan ("State Court"). The Debtor and her former husband, Sean Gormely, were divorced pursuant to a judgment of divorce entered on June 28, 2011. As part of the divorce, the Debtor and Gormely agreed to a sale of their marital home. In February, 2012, Gormely filed a motion in the State Court alleging that the Debtor failed to comply with the judgment of divorce and with other orders previously entered by the State Court. Gormely sought various forms of relief against the Debtor, including a finding of contempt. (ECF. No. 12, Ex. A.)

On March 7, 2012, the State Court held a hearing on the motion. Gormely appeared through counsel. The Debtor appeared without counsel. A review of the transcript (ECF No. 20, Ex. A) shows that the judge in the State Court was clearly dissatisfied with the Debtor's performance under certain orders previously entered by the State Court, including one order that required the Debtor to sign a listing agreement and show the marital property for sale. The State Court was especially concerned that the Debtor's delay showing the marital home and in signing the listing agreement

12-05632-pjs    Doc 25    Filed 03/14/13    Entered 03/14/13 12:59:57    Page 2 of 13

may have resulted in the loss of an opportunity to obtain a $30,000.00 discount from GMAC, the holder of the mortgage on the home. Although the State Court expressly stated that it was "not making any findings of fact," the State Court appointed Green as receiver, and explained the receiver's duties as follows:

> She's going to have two responsibilities: To report to the Court with regard to how the sales went down and if there was a loss in terms of the property, and she's also to effectuate the sale of the house, which means that she has the authority to sign any paperwork on behalf of the [Debtor] to effectuate the sale.

(Id. at 22.) The State Court also stated on the record that it was finding the Debtor in contempt of court for failing to follow the court's prior orders of October 5, 2011 and December 14, 2011.[1] (Id. at 23.) Finally, the State Court stated that the Debtor would be fully responsible for the receiver's fees. (Id. at 24.)

After the hearing, the State Court entered a handwritten order on March 7, 2012 (ECF No. 12, Ex. B), that stated in relevant part as follows:

> ① Sandra Green is hereby appointed receiver to A) effectuate the sale of the marital home and B) investigate whether [Debtor] has caused a financial loss due to [Debtor]'s violation of prior orders, including the $30,000.00 incentive initially offered by GMAC if the house was sold via short sale. ② Defendant shall be responsible for 100% of the Receiver's costs/fees. ③ [Debtor] is in contempt of court for violating the October 5, 2011 and December 14, 2011 Orders. . . .

On March 20, 2012, the State Court entered a second order that spelled out in more detail the receiver's responsibilities. This order again made it clear that the Debtor would be solely

---

[1] Both of these orders are handwritten and somewhat hard to read, but both appear to address disputes between the Debtor and Gormely on a variety of issues, including parenting, personal property, and the marital home. The October 5, 2011 order contained the provisions relating to the listing agreement, but both orders required cooperation in the sale of the marital home.

-3-

responsible for the receiver's fees, and set forth an hourly rate for the receiver of $250.00 per hour and $100.00 per hour for the receiver's paralegal. (Id., Ex. C.)

On June 21, 2012, the Debtor filed this Chapter 7 case.

On June 26, 2012, Green filed a report with the State Court. (ECF. No. 20, Ex. B.) Green's report described her activities as receiver. Green specifically stated that she could not find that the Debtor's conduct had resulted in a financial loss upon the sale of the marital home, as had been alleged in Gormely's motion that was heard by the State Court on March 7, 2012. The receiver's report confirmed that the marital home had been sold in a short sale, and concluded that the receiver "cannot make a specific finding or recommendation to the Court that it was the [Debtor]'s violations of previous Court Orders that caused the loss" of a potential $30,000.00 reduction in the GMAC debt on the marital home. (Id. at 6.) As for her own fees, the receiver's report noted that the Debtor had now filed Chapter 7 and that the receiver wished to have her fees approved by the State Court for the purpose of bringing them to the Bankruptcy Court for consideration. On September 5, 2012, the State Court entered an order approving the receiver's fees and costs in the aggregate amount of $7,577.68. (ECF No. 1, Ex. C.) It is that debt which Green seeks to have excepted from the Debtor's discharge.

**Summary Judgment Standard**

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there

-4-

be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d at 566 (citing Anderson, 447 U.S. at 256).

"Essentially, a motion for summary judgment is a means by which to 'challenge the opposing party to "put up or shut up" on a critical issue.'" Cox v. Kentucky Dept. of Transportation, 53 F.3d 146, 149 (6th Cir. 1995) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir.1989)). "If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted." Id. at 150 (citing Street, 886 F.2d at 1480).

## **Discussion**

As noted above, Green's complaint requests a determination of non-dischargeability under § 523(a)(6), (7) and (15). Because the Court has already ruled on the § 523(a)(7) and (15) issues, this opinion only deals with the § 523(a)(6) exception to discharge.

-5-

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." To be "willful" for purposes of § 523(a)(6), a debtor must *intend* the injury. Simply intending an act that causes injury is insufficient. Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998). The Sixth Circuit Court of Appeals has held that "willfulness" also means that "'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it . . . .'" Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 464 (6th Cir. 1999) (quoting Restatement (Second) of Torts § 8A, at 15 (1964)). "Malicious" means "done intentionally, without just cause or excuse." Tinker v. Colwell, 193 U.S. 473, 485-86 (1904) (interpreting analogous § 17a(2) of the former Bankruptcy Act); see also In re Markowitz, 190 F.3d at 465 n.10 (finding that a "lack of an excuse or justification for [a debtor's] actions will not alone make [a] debt non-dischargeable under § 523(a)(6)"). Any determination of a non-dischargeable debt under § 523(a)(6) also requires a finding by the Court that the debt in question was *caused* by the Debtor's willful and malicious act. Steier v. Best (In re Best), 109 Fed. Appx 1, 7 (6th Cir. June 30, 2004) (quoting National Auto Finance Co. v. Smith, 249 B.R. 748, 750 (Bankr. S.D. Ohio 2000)).

In support of her argument that her fees as receiver are non-dischargeable under § 523(a)(6), Green makes two basic arguments. First, Green argues that all of the elements of § 523(a)(6) are established by the ruling of the State Court when it found the Debtor in contempt and appointed Green as the receiver. According to Green, principles of collateral estoppel in Michigan preclude the Debtor from asserting that the debt is not for a willful and malicious injury by the Debtor. A subset of this argument is that contempt of court is *per se* willful and malicious, so a finding of contempt will always satisfy § 523(a)(6) for a debt arising from the contempt. Second, Green argues

that even if principles of collateral estoppel do not apply, the Debtor's conduct throughout the divorce proceeding that led the State Court to appoint a receiver constitutes a willful and malicious injury sufficient to make the receiver's fees non-dischargeable. The Debtor counters that even if the State Court made a finding that the Debtor was in contempt of the State Court's prior orders, the State Court did not make any ruling that the Debtor's conduct was willful and malicious. As a result, principles of collateral estoppel do not apply. Second, the Debtor argues that regardless of her conduct during the divorce proceeding in dealing with her ex-husband and the sale of the marital home, that conduct is irrelevant to the receiver's fees because the Debtor fully cooperated with the receiver, as evidenced by the receiver's own report to the State Court. Even if that conduct were relevant, the Debtor argues that there is no evidence that she intended to cause an injury. The Court concludes that the Debtor has the better arguments.

Principles of collateral estoppel apply to determinations of non-dischargeability of debt in bankruptcy cases. Spillman v. Harley, 656 F.2d 224, 227-28 (6th Cir. 1981). "The Full Faith and Credit Clause of the U.S. Constitution and its implementing statute, 28 U.S.C. § 1738, require federal courts to give preclusive effect to state-court judgments." McCoy v. Michigan, 369 Fed. Appx. 646, 649 (6th Cir. Mar. 12, 2010). Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered[.]" Id. (quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)) (other citation omitted). Because the State Court is a Michigan court, the Court must "look to Michigan law governing res judicata to determine its applicability." Id. Under Michigan law "[c]ollateral estoppel precludes relitigation of an issue in a [1] subsequent, different cause of action [2] between the same parties [3] where the prior proceeding culminated in a valid, final

judgment and the issue was [4] actually litigated, and [5] necessarily determined." People v. Gates, 452 N.W.2d 627, 630 (Mich. 1990) (footnote and citations omitted).

The only proceeding prior to this adversary proceeding was the divorce proceeding in the State Court between the Debtor and Gormely. Green was not a party to that proceeding until she was appointed as receiver on March 7, 2012. To the extent that Green was a party to the divorce proceeding after that date, the first element for collateral estoppel is present: there is an identity of parties to a prior proceeding. The second element of collateral estoppel is that there must be a valid, final judgment in the first proceeding. The only judgment in the prior proceeding between the Debtor and Green is the order entered by the State Court on September 5, 2012 that approved Green's fees. That is a valid, final judgment relative to the amount of her fees. Therefore, the first two elements of collateral estoppel appear to be present: the Debtor and Green were parties to a prior proceeding, and there was a final judgment rendered in that proceeding.

The next element is where the collateral estoppel analysis breaks down. There is nothing in the record to show that the Debtor and Green litigated in State Court the issue of whether the Debtor's conduct was willful and malicious. And there is no evidence that there was any determination by the State Court of any willful and malicious conduct by the Debtor when it made its award of receiver fees to Green. The award is silent on these issues.

Even if Green were to argue that the order appointing her as receiver, rather than the order awarding her fees, is the order that the Bankruptcy Court should look at to see what was actually litigated and necessarily determined, that order, too, is silent as to whether there was any conduct by the Debtor that was willful and malicious. The hearing held on March 7, 2012 in the State Court was not based on any conduct of the Debtor relating to Green, but rather was based upon the

-8-

12-05632-pjs    Doc 25    Filed 03/14/13    Entered 03/14/13 12:59:57    Page 8 of 13

Debtor's prior conduct relating to her ex-husband. But even that hearing did not result in any finding of willfulness and maliciousness with respect to the Debtor's conduct toward her ex-husband. The State Court, although finding the Debtor in contempt of its prior orders, expressly stated during the hearing that it was "not making any findings of fact," (ECF No. 20, Ex. A at 22), and there are no findings of fact in the order that it then entered after that hearing.

The third element of collateral estoppel is not present. The Debtor and Green did not litigate the issues of willfulness and malice in the State Court, and the State Court did not make any determinations of willfulness or malice. Therefore, the Court rejects Green's argument that the elements of § 523(a)(6) are established by principles of collateral estoppel.

But even without specific findings of willfulness and malice, Green argues that a finding of contempt of court is sufficient by itself to make a debt non-dischargeable under § 523(a)(6). Green cites In re Allison, 176 B.R. 60 (Bankr. S.D. Fla. 1994). In Allison the debtor "consented to the entry of judgment against him on Count II of the state court Complaint, which incorporated allegations of willful and malicious conduct on [the debtor]'s part" in violating Florida's Trade Secrets Act. Id. at 63. Because of this incorporation of the willful and malicious conduct allegations, the bankruptcy court did not have to independently examine the conduct of the debtor. Instead, the court applied collateral estoppel to the consent judgment, but in doing so, made a broader ruling that the "[f]ailure to comply with court directives contained in an injunction order satisfies the definition of 'willful and malicious.'" Id. at 64.

In making that ruling, the Allison court relied in part on an unpublished Sixth Circuit opinion, Phipps v. Kentucky Natural Resources & Environmental Protection Cabinet, No. 91-5986, 1992 WL 358480 (6th Cir. Dec. 3, 1992). The Phipps opinion contains no such broad ruling, and

-9-

instead examined whether the particular contemptuous conduct on the part of the debtor was willful and malicious. The debtor in Phipps was a recalcitrant miner, who was ordered to cease and desist his illegal mining and to reclaim the areas he had mined. Phipps, 1992 WL 358480, at *1. The debtor ignored the cease and desist order, a temporary injunction, a permanent injunction, and an order of contempt. He was sentenced to 12 months incarceration and given six weeks to purge himself of the contempt. Instead, of purging the contempt, he filed for Chapter 7 relief. In affirming the district court's denial of the debtor's motion for reconsideration, the Court of Appeals noted that

> the district court did not find that *any* failure to reclaim would constitute "willful and malicious" conduct under section 523(a)(6). Rather, it found that [the debtor]'s failure to reclaim was "willful and malicious" because he knowingly continued to engage in illegal mining activities that caused injury to the Commonwealth after being ordered to cease and desist. [The debtor] also knowingly refused to begin reclamation of the mining sites in violation of the state court's injunctive orders and despite being faced with incarceration for contempt.

Id at *3.

Under the facts in Phipps, the particular contemptuous conduct satisfied § 523(a)(6). That is not to say contemptuous conduct will do so in every case. As explained above, non-dischargeability under § 523(a)(6) requires willfulness. However, "[w]illfulness is not an element of civil contempt, so the intent of a party to disobey a court order is irrelevant to the validity of [a] contempt finding." Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 700 (6th Cir. 1996) (internal quotation marks and citation omitted). The Sixth Circuit has "never decided whether a debt resulting from contempt is willful and malicious *per se*." Musilli v. Droomers (In re Musilli), 379 Fed. Appx. 494, 498-99, 2010 WL 2222806 (6th Cir. June 3, 2010). Therefore, while Green is correct that contempt of court *may* serve as a basis for a non-dischargeable debt under § 523(a)(6), there is no *per se* rule.

The Court also rejects Green's second argument. The only evidence in the record to show how the Debtor acted at all with respect to Green is Green's report that she filed as receiver in the State Court. That report does not in any way state or imply that the Debtor willfully and maliciously injured Green. The report does not allege any injury to Green.

The only other conduct of the Debtor that could even arguably constitute a willful and malicious injury is the Debtor's conduct relative to her ex-husband, and her conduct in failing to comply with prior orders of the State Court entered in the divorce proceeding. Green's allegations regarding this conduct, all of which pre-date her appointment as receiver, mirror the facts alleged in Gormely's motion filed in State Court for an order to show cause. They all relate to the Debtor refusing to cooperate in the sale of the marital home:

> Debtor refused to sign sale documents for the marital home.
> Debtor intentionally blocked the sale of the marital home.
> Debtor harassed the former realtor until she quit.
> Debtor insisted that she would not comply with court orders.
> Debtor failed to allow showings of the marital home.
> Debtor failed to keep the home in presentable condition for showings.

Green alleges in her complaint "[t]hat the actions of the Debtor herein were willful and otherwise *caused damage to another entity, specifically, Debtor's former spouse*." (ECF No. 1, ¶ 21 (emphasis added).)

As noted, the State Court found that this conduct violated prior orders of the State Court. But to prevail in a § 523(a)(6) action, Green must prove that the Debtor engaged in this conduct with an intention to injure, not just to delay the sale of the marital home where she lived with her children. Green's motion for summary judgment relies entirely on the transcript of the March 7, 2012 hearing and the orders entered by the State Court. But the State Court made no findings, either during the hearing or in its orders, to show that the Debtor intended an injury or knew that her

actions were substantially certain to result in an injury, either to Gormely or to anyone else. Green's motion for summary judgment is not supported by any other evidence from which the Court could find or infer that the Debtor intended her conduct to injure Gormely or anyone else. In sum, Green does not have evidence to support a finding of willfulness, as required by § 523(a)(6). The absence of evidence of willfulness is fatal to Green's § 523(a)(6) action.

The Court also has substantial concerns about the other elements of § 523(a)(6). It is difficult to see how the Debtor's conduct with respect to her ex-husband, all of which pre-dated Green's appointment, could provide the requisite malice to make Green's fees non-dischargeable, especially where Green's own report does not state that the Debtor failed to comply with any duties in her dealings with Green, nor even suggest that the Debtor was uncooperative with Green. Moreover, even if the Debtor were found to have acted willfully and maliciously, it is not entirely clear to the Court that the receiver's fees were proximately caused by the Debtor's conduct toward either her ex-husband or Green. However, because the Court concludes that there are no genuine issues of material fact on whether the Debtor intended an injury, the Court need not reach the issues of malice and proximate cause.

### Conclusion

The Debtor is indebted to Green for her fees in the amount of $7,577.68 for services that Green performed as receiver appointed by the State Court. The Debtor was ordered by the State Court to pay those fees. It is unfortunate that the Debtor failed to pay those fees. However, that the Debtor failed to pay those fees does not mean that they are non-dischargeable. Whatever conduct may have led to the appointment of Green as receiver, there is no evidence before the Court to show an intent to injure. Therefore, Green cannot establish that the unpaid receiver's fees

-12-

constitute a debt for willful and malicious injury. For these reasons, the Court denies Green's motion for summary judgment under § 523(a)(6) and grants the Debtor's motion for summary judgment under § 523(a)(6).

.

**Signed on March 14, 2013**

                                       **/s/ Phillip J. Shefferly**
                                       **Phillip J. Shefferly**
                                       **United States Bankruptcy Judge**